UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ANDRE M. LOVETT, | : | Case No. 3:10-cv-443 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**ORDER THAT:(1) THE ALJ'S NON-DISABILITY FINDING IS FOUND NOT
SUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED;
(2) JUDGMENT SHALL BE ENTERED IN FAVOR OF PLAINTIFF AWARDING
BENEFITS; AND (3) THIS CASE IS CLOSED**

This is a Social Security disability benefits appeal.  At issue is whether the

administrative law judge ("ALJ") erred in finding the Plaintiff "not disabled" and

therefore unentitled to a period of disability, disability insurance benefits ("DIB"), and

supplemental security income ("SSI").  (*See* Administrative Transcript ("Tr.") (Tr. 8-25)

(ALJ's decision)).

**I.**

On April 25, 2007, Andre Lovett filed applications for a period of disability, DIB,

and SSI benefits, alleging disability since October 20, 2005[1] (Tr. 130-137), due to

diabetes, cholesterol, blood pressure, fatigue, stomach problems, depression, and anger.

(Tr. 11).

---

[1]    Plaintiff previously filed for DIB and SSI on April 3, 2006.  (Tr. 121-127).  On
September 8, 2009, counsel requested that the earlier claims be reopened, as good cause need not
be shown to reopen applications that were denied less than one year before a subsequent claim.
(Tr. 241).

Plaintiff's claims were denied initially and upon reconsideration. (Tr. 71-76, 78-80, 85-88). Plaintiff timely requested a hearing. (Tr. 91). A hearing was held before an ALJ on April 15, 2010. (Tr. 32-66). The ALJ issued a decision on April 28, 2010, denying benefits. (Tr. 5-25). Subsequently, Plaintiff requested review of the ALJ's decision. (Tr. 4). The Appeals Council denied review on October 27, 2010, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3, 5-7). Plaintiff now seeks judicial review of the Commissioner's final decision.

The ALJ found that Plaintiff had severe impairments, namely, "diabetes mellitus with early neuropathy; arthralgias;[2] major depressive disorder with psychotic features; personality disorder; and anxiety." (Tr. 12). While the ALJ did not think these conditions met or equaled a listed impairment (Tr. 13), she agreed that they would limit Plaintiff's ability to function in the work place. Specifically, she believed that Plaintiff had the residual functional capacity[3] to perform work at the medium exertional level[4] with limitations. (Tr. 16). The ALJ determined that although Plaintiff could not perform any of his past relevant work, she believed that there were a significant number of jobs in the national economy that he could perform, given his age, education, and work experience.

---

[2]    Arthralgias is severe pain extending along a nerve or group of nerves, experienced in a joint and/or joints.

[3]    The Agency's regulations define residual functional capacity ("RFC") as "the most you can still do despite your impairments." 20 C.F.R. § 404.1545(a)(1).

[4]    Medium work involves lifting no more than 50 pounds occasionally or 25 pounds frequently. 20 C.F.R. §§ 404.1567(c), 416.967(c).

(Tr. 24).

Plaintiff was 45 years old at the time of the alleged onset date, and turned 50 years

old the day after the ALJ's April 28, 2010 decision. Plaintiff is considered "closely

approaching advanced age." 20 C.F.R. §§ 404.1563, 416.963. (Tr. 24). Plaintiff

graduated from high school (Tr. 24), and in the past he has worked as an assembler and

job setter. (Tr. 10, 24). Plaintiff is married and lives with his wife, who no longer works

after being laid off, and three children, ages 15, 17, and 18. (Tr. 10).

The ALJ's "Findings," which represent the rationale of her decision, were as

follows:

1. The claimant meets the insured status requirements of the Social
   Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since October
   20, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et
   seq.*).

3. The claimant has the following severe impairments: diabetes mellitus with
   early neuropathy; arthralgias; major depressive disorder with psychotic
   features; personality disorder; and anxiety (20 CFR 404.1520 and 416.920).

4. The claimant does not have an impairment or combination of impairments
   that meets or medically equals one of the listed impairments in 20 CFR Part
   404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526,
   416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that
   the claimant has the residual functional capacity to perform medium work
   as defined in 20 CFR 404.1567 and 416.967 with the following additional
   limitations: no climbing ladders, ropes, or scaffolding; occasional climbing
   of ramps and stairs; occasional operation of foot controls; no hazardous
   machinery or unprotected heights; unskilled work in a low stress setting,

-3-

defined as work with no more than occasional changes in work setting, no hazardous conditions, and no production-rate pace demands; no contact with the general public; only superficial interaction with co-workers and no tandem tasks; and no over-the-shoulder supervision.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on April 29, 1960 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(A), 416.969, and 416.969(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from October 20, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12-25).

       In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to disability insurance benefits or supplemental security income.  (Tr. 25).

-4-

On appeal, Plaintiff argues that the ALJ erred in his evaluation of the treating physicians, Drs. Gollamudi and Shaw. The Court will address this argument in detail.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**A.**

Plaintiff claims that the ALJ erred in his evaluation of the treating physicians' opinions.

With respect to his psychological issues, the record reflects that:

Plaintiff worked full-time for Delphi for more than 25 years. (Tr. 52). In August 2004, his sister died and he filed for bankruptcy. As a result, he became overwhelmed with depression. Plaintiff tried to work, but was unable to perform, often falling asleep on the job. Subsequently, his symptoms progressed and he was not able to drive to work. (Tr. 43-44). After excessive absences, he was fired. (Tr. 45).

Plaintiff saw a psychologist, Giovanni Bonds, on November 21, 2005. (Tr. 255). Upon initial evaluation Plaintiff felt anxious, depressed, stressed out, and had trouble sleeping.[5] (Tr. 458-88). He was overwhelmed, with ruminating thoughts, worry, and panic, associated with chest pains and shortness of breath. He had suicidal thoughts, felt sad, confused, and helpless daily.[6] Plaintiff was very angry at work and felt he would hurt someone if he returned. (Tr. 485). Dr. Bonds diagnosed major depressive disorder,

---

[5] Plaintiff notes that has problems with his hygiene because he is too tired to bathe. (Tr. 10).

[6] Plaintiff stated that he acted on his suicidal thoughts more than once by eating large amounts of sugar which has put him into a mild diabetic coma. (Tr.11). Additionally, he stated that he thinks a lot about dying and he wants to just go to sleep and not wake up. (*Id.*)

single episode, severe, and a GAF of 50.[7]

Dr. Bonds referred Plaintiff to his primary care physician for medication management for depression and suggested weekly therapy. (Tr. 484, 488). Dr. Bonds saw Plaintiff two more times until he lost his insurance and could no longer afford to see her. (Tr. 480-84). Dr. Bonds referred Plaintiff to Crisis Care for further treatment with the community mental health system. (Tr. 480).

On March 17, 2006, Plaintiff was evaluated at Samaritan Behavioral Heath with depression, suicidal thoughts, insomnia, decreased energy, appetite, and motivation. (Tr. 275-90). He felt resentful and was full of rage, with dreams of killing work supervisors. (Tr. 284).

On March 29, 2006, primary care physician Dr. Scott Shaw completed a mental functional capacity assessment. (Tr. 411-12). Dr. Shaw thought Plaintiff was extremely limited in his ability to maintain attention and concentration, and markedly limited in several other areas including: maintaining regular attendance, completing a workday or workweek without psychological symptoms, and responding appropriately to criticisms. (Tr. 411).

---

[7]    A Global Assessment of Functioning ("GAF") score of 50 (41-50 inclusive) indicates "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job.)" Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. 2000) ("DSM-IV"). A GAF is a score assigned to a person when considering all psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. (Id.)

On April 19, 2006, Plaintiff was evaluated by Advanced Therapeutic Services. (Tr. 348-50).  On mental status examination, Plaintiff's affect and mood were depressed and he had poor impulse control with homicidal thoughts.  (Tr. 350).  Major depressive disorder was diagnosed, and psychiatric evaluation and individual therapy was recommended.  (Tr. 349).

Dr. Follamudi examined Plaintiff on May 3, 2006 and diagnosed major depression with psychotic features, and a GAF of 55.  (Tr. 345-46).  On May 16, 2007, Plaintiff's symptoms were improved.  (Tr. 342).

Nicole Leisgang, a psychologist, clinically evaluated Plaintiff on September 15, 2006, at the request of the state agency.  (Tr. 302-06).  On mental status examination, Plaintiff was anxious, depressed, and moved slowly with little energy.  His short-term memory was "weak," attention was "not strong," and reasoning skills were limited. Cognitively, Plaintiff was functioning at the low average range.  (Tr. 304).  Dr. Leisgang diagnosed major depressive disorder, severe, recurrent, and a GAF of 41.  (Tr. 305). Plaintiff's ability to withstand stress associated with regular work activity was "moderately to seriously impaired by his emotional difficulties."  (Tr. 306).  In fact, Dr. Leisgang opined that the stress of regular work activity could exacerbate his psychological symptoms.  *Id.*

Jerry Flexman, a psychologist, examined Plaintiff on July 5, 2007, at the request of the state agency.  (Tr. 351-56).  Plaintiff felt "angry much of the time," with thoughts and

dreams of killing. (Tr. 353). On mental status examination, Dr. Flexman thought that

Plaintiff's effort and judgment for daily affairs were both poor. (Tr. 354-55). Dr.

Flexman diagnosed major depression, single episode, malingering,[8] a personality disorder,

and assigned a GAF of 60.[9] (Tr. 355).

Plaintiff saw his treating psychotherapist frequently between April 2006 and

August 2009, usually every two weeks. (Tr. 514-60). On May 5, 2008, the treating

therapist wrote in his treatment notes that Plaintiff "continues to battle [with] depression

in his life [Plaintiff] continues to struggle with daily living." (Tr. 539). Additionally, he

noted that Plaintiff's symptoms were almost always unimproved. (Tr. 514-60).

On at least five occasions, Dr. Gollamudi opined that Plaintiff could not work full

time. In "Basic Medical" forms dated May 16, 2007 and October 13, 2008, Dr.

Gollamudi thought that Plaintiff was unemployable for at least 12 months due to anxiety,

social isolation/withdrawal, and decreased sleep associated with major depressive

disorder with psychotic features. Plaintiff's prognosis was "poor but stable." (Tr. 508-

11). In the "Ability to Work" forms dated February 4, 2009 and October 29, 2009, Dr.

Gollamudi noted that Plaintiff could not even perform part-time work in a competitive

work environment. (Tr. 583-87).

---

[8]     A medical term that refers to fabricating or exaggerating the symptoms of mental or
physical disorders.

[9]     A GAF of 50-60 indicates "Moderate symptoms (e.g., flat affect and circumstantial
speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school
function (e.g., few friends, conflicts with peers or co-workers)." DSM-IV, 34 (4th ed. 2000).

Plaintiff testified at the hearing that since his depression started in August 2004, he has no interest in engaging in any of his previous hobbies or socializing. (Tr. 49-50). At times, he hears someone calling his name. (Tr. 54). He sees a psychiatrist (Dr. Gollamudi) monthly and a therapist every other week, and he testified that seeing a counselor helps and without it he "would be dead." (Tr. 46).

With respect to Plaintiff's physical issues, the record reflects that:

Plaintiff has a history of diabetes with elevated blood sugar levels, at times, over 200.[10] (Tr. 457-78). Plaintiff alleges that he now has nerve damage in his legs and numbness in his feet, arms, and legs, from his diabetes. (Tr. 38). Plaintiff testified that his health allowed him to do very little in a typical day, and that he did not do any chores, cook, shop, run errands, or do outside work. (Tr. 46-47). He testified that he had not gone out in about four years and had very few visitors. (Tr. 48-49).

Dr. Sugumaran was Plaintiff's primary care physician for several years until late 2005. He monitored and treated Plaintiff for diabetes, cholesterol, and general medical conditions. (Tr. 449-79). According to Dr. Sugumaran's notes, Plaintiff's blood sugar was often uncontrolled and significantly high. (Tr. 457-78). Thereafter, Plaintiff saw Dr. Shaw at Schear Family Practice for primary care treatment. Dr. Shaw saw Plaintiff primarily for diabetes management and related symptoms. Plaintiff's blood sugar was consistently high – at least 200 and as high as 449 (when Plaintiff did not have medications). Dr. Shaw completed an "Ability to do Work" and "Basic Medical" form on

---

[10] A "normal" blood sugar level is approximately 80-140.

March 29, 2006. (Tr. 407-410). Plaintiff's diagnosis included diabetes, low back pain, chest pain, diabetic neuropathy, anxiety, and depression. (Tr. 408). Dr. Shaw opined that Plaintiff was unemployable for at least 12 months. (Tr. 410).

Dr. Danopulos examined Plaintiff for the state agency on August 2, 2007. Dr. Danopulous concluded that Plaintiff's diabetes were "poorly controlled" and his "clinical impression was that he had very early signs of neuropathy."[11] (Tr. 381). Chest pain, possibly related to acid reflux disease and depression were diagnosed. Dr. Danopulous opined that Plaintiff's ability to do any work-related activities was affected in a negative way from his poorly controlled diabetes. (Tr. 382).

Dr. Caldwell, a state reviewer, thought Plaintiff retained the functional capacity to perform a full range of medium exertional work activities (Tr. 388), and Dr. Albert found the same. (Tr. 448).

Plaintiff's treating specialist, psychiatrist Dr. Gollamudi, consistently found Plaintiff unable to perform substantial gainful activity. (Tr. 508-11, 513, 579, 583-87). However, the ALJ gave Dr. Gollamudi's opinion "only some weight" (Tr. 20), while the ALJ gave Dr. Flexman, the one-time examining psychologist, "significant weight" and non-examining reviewing psychologist, Dr. Waddell, "great weight," because they were "not inconsistent with the evidence of record." (Tr. 20-21).

A treating physician's opinion is given controlling weight when it is both well supported by medically acceptable data and if it is not inconsistent with other substantial

---

[11]     Neuropathy is damage to the nerves or nervous system.

-11-

evidence of record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Dr. Gollamudi's opinion is supported by significant clinical findings dating back to May

2006.[12] (Tr. 345-47). Dr. Gollamudi's clinical findings are mirrored by those of other

examining and treating mental health specialists. *See, e.g.,* Dr. Bonds who noted that

Plaintiff had a GAF of 50 and that he was "severely limited" in his ability to tolerate

regular work-related stress, and withdrew from family, friends, and personal business.

(Tr. 292-94). Additionally, Dr. Leisgang found that Plaintiff had a GAF of 41, and

opined that the stress associated with regular work activity could exacerbate Plaintiff's

psychological symptoms and that his ability to withstand stress associated with regular

work activity was "moderately to seriously impaired by his emotional difficulties." (Tr.

306).

     The only examining mental health source opinion contrary to Dr. Gollamudi's is

the evaluation of non-treating, one time evaluating psychologist, Dr. Flexman. (Tr. 351-

56). Dr. Flexman's findings appear to be based on the assumption that Plaintiff was

making up his psychological symptoms. Conversely, Dr. Leisgang, another examining

psychologist, found that Plaintiff "did not appear to exaggerate." (Tr. 303). Moreover,

Plaintiff has regularly reported and sought treatment for disabling depression since at

---

[12]    The Social Security regulations recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2).

least November 2005. (Tr. 274-90, 291-99, 335-50, 395-405, 480-507, 514-60).

The ALJ also relied upon the fact that the treatment records indicated that Plaintiff "improved and stabilized" (Tr. 20, 23), which does not mean that Plaintiff was fully functioning and able to withstand the stress and pressures associated with regular work activity. In fact, on several occasions Dr. Gollamudi opined that Plaintiff's prognosis was "poor but stable." (Tr. 508-11, 513, 579). Dr. Gollamudi's treatment notes show that Plaintiff's symptoms were often "unimproved" or worse. (Tr. 521, 524, 527).

Where a treating physician's opinion cannot be given controlling weight, it must be weighed under a number of factors set forth in the Commissioner's Regulations – "namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(d)(2)). Opinions of one-time examining physicians and record-reviewing physicians and medical experts who testify during administrative hearings are also weighed under these same factors, including supportability, consistency, and specialization. *See* 20 C.F.R. § 404.1527(d), (f). In rejecting Dr. Gollamudi's opinion, the ALJ neither referenced "deferential weight" nor did she consider the relevant factors. (Tr. 19-20). The Regulations promise claimants not only an explanation but "good

reasons" for rejecting a treating physician's opinion. 20 C.F.R. § 404.1527(d)(2).[13]

Accordingly, the Court finds that the ALJ's findings are not supported by substantial evidence because she gave improper weight to the findings of Dr. Flexman, a one-time evaluating psychologist who simply reviewed the records. Moreover, other than rejecting the opinion of the treating psychiatrist, the ALJ did not provide sufficient medical evidence to support her RFC findings.

## B.

Second, Plaintiff argues that Dr. Shaw's finding that he could not perform full-time work is supported by the medical record.

On August 2, 2007, Dr. Danopulos concluded that Plaintiff's diabetes was "poorly controlled." and his "clinical impression was that he has very early signs of neuropathy." (Tr. 381). In fact, Dr. Danopulos agreed with Dr. Shaw that Plaintiff's "ability to do any work-related activities is affected in a negative way from his poorly controlled diabetes." (Tr. 382). Additionally, the ALJ rejected a mental RFC form from Dr. Shaw, noting that he "is not a psychiatrist or licensed psychologist and, therefore, is not considered an acceptable medical source to evaluate the effect of [Plaintiff's] mental impairments on his ability to perform work-related functions." (Tr. 19). The fact that Dr. Shaw is a primary care physician, rather than a psychiatrist, does not prevent him from being an acceptable

---

[13]    "[W]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.' *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009).

medical source.  Specialization is just one factor in evaluating the weight given to an opinion.  However, "when a treating source has reasonable knowledge of your impairments, we will give the sources opinion more weight than we would give it if were from a non-treating source."  20 CFR § 404.1527(d)(2)(ii).

The ALJ erred in her assumption that Dr. Shaw's opinion was based solely on "an unquestioning acceptance of claimant's subjective complaints" (Tr. 17-18), when Dr. Shaw is the primary care physician.  Plaintiff's treating physician emphasized the fact that, in addition to his physical ailments, Plaintiff's depression and anxiety impair his ability to find and sustain work.

Accordingly, the Court finds that the ALJ improperly weighed the medical evidence by failing to give controlling weight to the treating physicians.  The non-examining and/or one-time evaluating phsycians' assessments, based in part on incomplete factual findings, does not constitute *substantial evidence* so as to overcome the findings of the treating physicians.  Therefore, the proof of disability is strong and opposing evidence is lacking in substance.  A remand in this matter would merely involve the presentation of cumulative evidence and would serve no useful purpose.  *Felisky v. Bowen,* 35 F.3d 1027, 1041 (6th Cir. 1994).

### III.

When, as here, the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted.  The Court has authority to affirm, modify or

-15-

reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987).

The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky*, 35 F.3d at 1041; *Mowery v. Heckler*, 772 F.2d 966, 973 (6th Cir. 1985). Such is the case here.

Here proof of disability is overwhelming and remand will serve no purpose other than delay. As fully recited herein, in view of the extensive medical record of evidence of disability, and the credible and controlling findings and opinions of treating physicians, Drs. Gollamudi and Shaw, proof of disability is overwhelming.

### IT IS THEREFORE ORDERED THAT:

The decision of the Commissioner, that Plaintiff was not entitled to a period of disability, disability insurance benefits, and supplemental security income beginning October 20, 2005, is hereby found to be **NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**, and it is **REVERSED**; and this matter is **REMANDED** to the ALJ for an

immediate award of benefits; and, as no further matters remain pending for the Court's review, this case is **CLOSED.**

Date: ___11/14/11___

Timothy S. Black
United States District Judge